SARLES *et al.*, Appellants, *v.* SHARLOW *et al.*, Respondents.

1. Statute of Frauds—C. C. § 920, subd. 1.—Performance within Year.

An oral agreement made June 5, 1883, whereby D. contracted to furnish S. lumber and other materials as he might need them to construct four buildings, three to be erected during the season of 1883, and the fourth during the season of 1884, was one, from its terms, that was capable or possible of being performed within a year, and not, therefore, invalid under section 920, subd. 1, C. C., requiring contracts not to be performed within a year to be in writing, or that there should be some note or memorandum thereof.

**2. Same—Construction—Subdivision 1, § 920, C. C.**

Subdivision 1, § 920, C. C., making an agreement that by its terms is not to be performed within a year invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party to be charged, is substantially a re-enactment of the statute of Car. II. on the same subject, and under it, to hold an agreement void, it must be incapable of performance within a year.

**3. Rules as to Construction and Enforcement of Contracts.**

It is the policy of the law to sustain and enforce contracts when it can be done without violence to the language used, or the rules of construction; and when the language is equally susceptible of two or more constructions, that will be adopted which will sustain the contract, rather than the one that will destroy it.

**4. Mechanics' Liens—C. C. Pro. § 662—Filing and Correction.**

Under section 662, C. C. Pro., permitting a mechanic's lien to be filed with the clerk of the district court within 90 days after furnishing the materials, D. in due time filed his lien, but from an error in the description of the land it created no charge. Seven days after, but within the ninety days, the clerk, at the instance of D., corrected the lien by inserting the true description, swore D. to it, and indorsed thereon what he had done in the premises. *Held* a valid lien from and after the correction, though the action of the clerk was "somewhat irregular."

(Argued February 9, 1887; reversed February 16; opinion filed February 21, 1888.)

Appeal from the district court of Stutsman county; Hon. W. H. Francis, Judge.

*A. D. Thomas* and *John S. Watson,* for appellants.

The mechanic's lien was made and filed by the plaintiffs at their own expense, and for their sole use and benefit. After filing, it still remained their property, and they had a perfect right, with consent of the clerk, to withdraw it from the files, and to destroy it, or correct an error in it, so long as such correction was made fairly, openly, and in a manner that could not deceive the public.

The corrected instrument, resworn to on the 7th November, 1884, showed conspicuously that it was not perfected until that date. And that was within 90 days after all of said material

had been furnished. See *Challoner* v. *Howard*, 41 Wis. 355, 14 Kan. 227; Phillips, Mechanics' Liens, 599.

The court erred in holding that the contract was invalid because within the statute of frauds, that statute having no application to executed contracts.

It was for the sale and delivery of lumber and building material.

The property was sold and delivered, and the primary object of this action is to recover for goods sold and delivered. The secondary object is to assure such recovery by the enforcement of the lien given by statute.

The court decides that the plaintiff is entitled to recover the amount claimed, yet denied the lien on the ground that the contract was void. That is a palpable inconsistency which must have resulted from an inadvertent application to this case of the law governing executory contracts within the statute of frauds.

*Dodge & Camp*, for respondents.

The point made by appellants, that after filing the lien it still remained their property, and they had perfect right, with consent of the clerk, to withdraw it from the files, and to destroy it, or to correct an error in it, etc., we deny. The act of the clerk permitting the description of the premises to be changed was unauthorized, and against positive law, and a court should construe the unlawful act as not having been done. Section 140, P. C.

A mechanic's lien is not only a record and a paper, but it is a proceeding, as defined in practice, which only a court, if any one, can correct. 13 How. (N. Y.) 398–401; Wait, Code, 19.

No process, pleading, or record can be amended by the clerk or other officer of any court, or by any other person, without the the order of such court or some other court of jurisdiction. 4 Wait, Practice, 644; *McComber* v. *Mayor*, 17 Abb. 35, 5 Wis. 386; *Collins* v. *Collins*, 24 Amer. Rep. 632.

The lien when filed is the commencement of a proceeding to subject the property to the contractor's claim, without the filing

of which he would simply have an action at law against the owner. *Valentine* v. *Ransom,* 10 N. W. Rep. 338; *Rugg* v. *Hoover,* Id. 473; *Finane* v. *Las Vegas Hotel Co.,* 5 Pac. Rep. 725; *Kruse* v. *Thompson,* 4 N. W. Rep. 814; *Jones* v. *Magee Lumber Co.,* 19 N. W. Rep. 678; *Hutton* v. *Maines,* 28 N. W. Rep. 9; *Malter* v. *Falcon Mining Co.,* 2 Pac. Rep. 50; *White Lake Lumber Co.* v. *Stone,* 27 N. W. Rep. 395; *Sisson* v. *Holcomb,* 26 N. W. Rep. 155.

A party filing a paper in the clerk's office has no further control over it except to file another to satisfy, modify, or nullify the original; and such paper cannot be changed except by order of the court, and not then if the change would affect the rights of third parties. 11 Wis. 314; 15 Wis. 68.

The contract was void because by its terms not to be performed within one year. It was performed in accordance with its terms, and not within one year. Such a contract, when performed by one of the parties, will not support an action; that is, the action must be on a *quantum meruit,* and not on the contract. 3 Parsons, Cont. 39; Browne, St. Frauds, (4th Ed.) §§ 110, 122*a,* 131, 289; *Moody* v. *Smith,* 70 N. Y. 598; *Galvin* v. *Prentice,* 6 Amer. Rep. 58; *Bernier* v. *Cabot Man. Co.,* 36 Amer. Rep. 343; *Towsley* v. *Moore,* 27 Amer. Rep. 434.

The lien is simply security for the contract. It cannot subsist without a contract; and by contract is meant a valid, not a void, contract. Kneeland, Mech. Liens, 56; *Rogers* v. *Phillips,* 47 Amer. Dec. 727; *Chapin* v. *Paper-Works,* 79 Amer. Dec. 263; *Monroe* v. *West,* Id. 524; *Hunter* v. *Blanchard,* 68 Amer. Dec. 547; *Bottomly* v. *Grace Ch.,* 2 Cal. 90.

THOMAS, J. This is an action for the enforcement of a mechanic's lien for lumber and material furnished by appellants to the respondent James L. Sharlow, for the erection of certain buildings on said Sharlow's land.

The complaint avers, in substance, that on the 18th day of August, 1883, the plaintiffs entered into a contract with the defendant Sharlow, whereby they agreed to furnish to him lumber

and material for use in the construction of certain buildings to be situate on the land of said Sharlow.    Between the 18th day of August, 1883, and the 10th day of September 1884, pursuant to said agreement, plaintiffs furnished lumber and material for the erection of said buildings, of the reasonable value of $2,795.79.

The joint answer of defendants Sharlow, D. C. Buck, and Daniel H. Buck alleges, on the part of Sharlow, what amounts to a general denial, and an accord and satisfaction.    On the part of the defendant Buck it is alleged that, on or about the 1st day of November, 1884, defendant James L. Sharlow sold and conveyed the premises described in the complaint to defendant D. C. Buck, and that he, before the institution of this suit, sold and conveyed the same to his co-defendant Daniel H. Buck, who is now the owner thereof in fee.

In the answer of the other defendants the only material averment is that defendant Walter J. Hughes was given a mortgage on said land of date the 11th of December, 1883, which was duly recorded, and has since been foreclosed, and the land purchased by said Hughes.

The trial in the district court resulted in a decree denying plaintiffs' lien, and plaintiffs prosecute this appeal seeking to reverse said judgment, and assign numerous errors in support thereof.    We, however, deem it worth our while to consider but three of these alleged errors, as upon them depends the proper settlement of all the issues in the case.    They are substantially as follows:

1. The court erred in deciding the agreement between the plaintiffs and the defendant Sharlow void by reason of the statute of frauds.

2. The court erred in holding plaintiffs' lien invalid.

3. The court erred in refusing to grant a decree in favor of plaintiffs, on the record and findings of the court, as demanded in the complaint.

It will be observed that the assignments of error present for our consideration questions of law; but, in order to properly

determine them, it is necessary to examine the facts upon which the court below based its judgment. It appears from the findings of the court, aided by a special verdict of a jury, that the facts are about as follows: The contract was made on or about the 5th day of June, 1883, by the terms of which the lumber and material were to be furnished by plaintiffs as they might be needed by defendant Sharlow in the construction of the buildings aforesaid. The dwelling-house, barn, and small granary were to be built during the season of 1883; the large granary during the season of 1884. The agreement was oral, and no memorandum thereof was made or signed by the parties. It further appears that the house, barn, and small granary were built between the 18th day of August, 1883, and the 5th day of June, 1884; the large granary was erected and completed between the 16th day of August and the 15th day of September, 1884. The plaintiffs furnished for use in the construction of these buildings lumber and other material of the value of $2,600.17, and there was no accord and satisfaction. The last item of lumber and material was furnished on the 10th day of September, 1884.

It also appears from the findings of the district court that on the 30th day of October, 1884, Lee B. Durstine, one of the plaintiffs, executed and filed in the office of the clerk of the district court of Stutsman county a written statement, verified by his affidavit, containing what was thought to be a description of the property sought to be charged, situated on the lands of the defendant Sharlow, with an itemized account of lumber, etc., attached. Thereafter, on the 7th day of November, 1884, the clerk, at the instance of said Durstine, altered the description of the lands, as contained in said lien, so as to make it conform to the true description of said land. As thus corrected, it was sworn to by said Durstine, and was suffered to remain of record, with the written indorsement thereon by the clerk of what had been done in the premises.

It was upon this state of facts that the district court rendered its decree giving judgment for the amount of plaintiffs'

claim, but denying the enforcement of the plaintiffs' lien. If the court below were correct in holding the agreement between plaintiffs and Sharlow void because within the statute of frauds, it follows, as a matter of course, that the lien was also invalid, from the fact that, under the law of this territory, such a lien must be based on a contract. Code Civil Proc. § 655.

But is the agreement as found by the court below within the statute of frauds? It is for the sale of personal property; and, in order to be within the purview of said statute, it must be "an agreement that by its terms is not to be performed within a year from the making thereof." Civil Code, subsec. 1, § 920. This, it will be seen, is substantially an enactment by the legis- lature of the territory of the somewhat ancient statute (Car. II.) on the same subject. It has been uniformly held by courts of this country and England that, in order to render an agree- ment void by reason of this statute, it must be from its terms incapable of performance within a year from the making thereof. *Houghton* v. *Houghton*, 77 Amer. Dec. 71; *Blanding* v. *Sargent*, 66 Amer. Dec. 720, note, 722; *Peters* v. *Westborough*, 31 Amer. Dec. 142; *Gadsden* v. *Lance*, 37 Amer. Dec. 548; *Lyon* v. *King*, 45 Amer. Dec. 219; *Esty* v. *Aldrich*, 46 N. H. 129; *Worthy* v. *Jones*, 11 Gray, 170.

It is true, as it seems to us, some of these cases run the knife of judicial interpretation dangerously near the vitals of this clause of the statute; but, as they seem to be in harmony with the general trend of authorities on the subject, we may regard them as announcing the settled construction to be given to the statute. We may also not unreasonably assume that the legis- lature of this territory, by its enactment of said statute, intended to adopt the construction thus given it by the courts.

Let us see, then, whether the agreement, by its terms, was capable or possible of performance within a year from the mak- ing thereof. The lumber and materials were to be furnished as they were needed by Sharlow for the erection of the buildings, three of which, by the terms of the agreement, were to be and were actually built during the season of the year 1883; the

other was to be built during the season of the year 1884, and was erected and completed between the 16th day of August and the 15th day of September of that year.

It will be observed that the agreement was not performed within a year from its making as regards the large granary; but was there anything in the terms thereof which prevented it from thus being performed? It seems to us that, under the terms of this agreement, Sharlow had the right, if he so desired, to have completed these buildings, and demanded the delivery of the lumber for that purpose, at a time prior to the 5th day of June, 1884. If so, it was certainly possible to have performed the contract within a year from its making. That Sharlow had this right or privilege, under the terms of said agreement, is very clear, unless the word "season," as used in the agreement, be construed as referring alone to a period of the year subsequent to the 5th day of June. Such a construction would be entirely arbitrary, as there is nothing in the context of the agreement, or in the record of this case, tending to support such an interpretation. It is equally true that the record is silent as regards any other construction to be given it.

But it is a familiar rule, and one of universal application, that, when the language of a contract is equally susceptible of two or more constructions, courts will invariably adopt that which will sustain the contract, rather than one which will destroy it.

In our opinion it is not the duty of courts of justice to rummage through nebulous subtleties of nicely-drawn theories of counsel, in order to discover some technicality or seeming defect upon which to impale a contract, and hold it void; but, on the contrary, it is the policy of the law that contracts should be sustained and enforced when this can be done without violence to the language used or the rules of construction.

It is this view of the law, we apprehend, that has resulted in a somewhat subtle and metaphysical interpretation, by the courts, of the statute sought to be invoked in the case at bar, by which it has been emasculated of much of its strength, and many of its functions.

We see no good reason to hold the word "season," as employed in the agreement, has reference alone to a period of the year subsequent to the 5th day of June; but, in our opinion, it embraces within its scope and meaning that season of the year which, by reason of the severely rigorous climate of this latitude, such work as the building of houses is necessarily confined, to-wit, from the 1st of April until the 1st of December of each year.

It may be said that we are driven *dehors* the record in order to arrive at this conclusion. We answer that we are driven to this conclusion by the exercise of common sense, aided by every-day experience and observation, the circumstances under and object for which the contract was made, the which courts are bound to do, in order to give to language the force and effect intended by the parties using it.

We therefore conclude that it was optional with defendant Sharlow, under the terms of the agreement, to have completed these houses and barns at any time during the building season of the years 1883 and 1884, and that said agreement is not void, but in all respects a good and valid contract.

The next question presented for our consideration is the validity of plaintiffs' lien, as it stands upon the record of the clerk's office. It is conceded that the lien, when first filed of record, by reason of an error in the description of the land, could create no charge upon the property now in controversy. It is contended by counsel for respondents, not without some plausibility, that the change or correction made in the description of the lands by plaintiffs on the 7th of November, 1884, several days after the lien was first filed, was illegal and void.

Under the law, plaintiffs had 90 days from the date of the last delivery of lumber, the 10th day of September, 1884, in which to file their lien. Code Civil Proc. § 662. This being true, plaintiffs had the right, if dissatisfied with the lien as first filed, to amend it, or prepare and file a new one, at any time within the said 90 days. This is conceded by counsel for respondents; but they contend it could not be amended in this

way, because the lien had previously been filed, and thereupon became a public record; and the clerk not only had no authority, but acted in violation of the law, in changing it, or permitting it to be done. The manner of correcting the error in the lien was clearly irregular, and, perhaps, so far as the clerk is concerned, a technical infringement of the law; but the fact remains that the erasure and correction were made, and, as thus corrected, the lien conformed to the actual facts in the case. Hence the question for our determination is, was the lien, as it stood upon the record after correction, invalid, by reason of the manner in which it was made to speak the truth? As the clerk, at the time of correcting the error, indorsed in writing on the lien, fully and clearly, all that had been done in the premises, it seems to us, though somewhat irregular, it was, in effect, the filing of a new lien; the erasures and alterations having destroyed the old one, for which, it may be, the clerk is liable to prosecution. But that fact, it seems to us, will not invalidate the new or corrected lien. Suppose the clerk had, at the instance of the plaintiff Durstine, withdrawn the lien from the files, and destroyed it by burning, would it be contended that this act would have deprived the plaintiffs of the right to file a new one at any time within the 90 days prescribed by law? Clearly not. Then, how can it be said that the act of the clerk, in destroying or mutilating the old lien, invalidated the new or corrected one, which, we hold, was thereupon filed of record, as evidenced by the written indorsement of the clerk made at the time?

It cannot be said that the lien, as corrected and filed, could possibly mislead, as it would most certainly give to any one examining it correct information touching the nature, the amount of the claim therein, and the land sought to be charged therewith. It was done within the 90 days, during which time the law imputes constructive notice, to all persons whatsoever, of the lien, whether filed of record or not.

We can therefore see no reason to hold the lien invalid because of the irregularity attending its recording or filing; but, on the

contrary, we deem it a good and valid lien, and, as it stood upon the records, was constructive notice to all subsequent purchasers and incumbrancers.   The judgment is reversed.

All the justices concurring.